Walker and others *vs.* The Bank of Augusta.

No. 66.—VALENTINE WALKER and others, plaintiffs in error *vs.* THE BANK OF AUGUSTA, defendant in error.

[1.] The act of 1836, making the certificates of notaries public, evidence of the facts stated therein, not only makes them *prima facie* evidence of the *non-payment* of a note, but evidence of *notice* also, when so stated in the certificate under the hand and seal of the notary.

[2.] The statement of the notary in his certificate, that he had deposited in the post office notices addressed to the indorsers at their respective places of abode, *held prima facie* sufficient to make out the plaintiff's case, without stating the particular place to which the notices were addressed.

[3.] Where indorsers of a promissory note resided in the county of Richmond, the one seven and a half, and the other twelve miles from the city of Augusta, and were in the habit of receiving their letters and papers at the Augusta post office, at least once a week, *held,* that notices of the dishonour of the note, deposited in the Augusta post office, addressed to them, was sufficient to make them liable, ugh there was a post office at the Richmond Factory, nearer to them than ce at Augusta.

Assumpsit. From Richmond Superior Court. Tried before Judge HOLT. June Term, 1847.

This cause was predicated upon a note of Thomas Glasscock, payable to, and indorsed by the plaintiff, jointly with one James Wood, deceased, and others, and discounted by the Bank of Augusta. The plaintiffs in error, who were defendants below, pleaded *non assumpsit.*

Upon the trial, after the introduction of the note, the counsel for the plaintiff offered as evidence of demand of payment, and notice of non-payment to the defendants, the certificate of protest of Robert Clarke, a public notary. The counsel for the defendants admitted that the certificate of protest was sufficient evidence of demand and refusal of payment, but insisted that it was no evidence of notice, both upon the ground that the act of 1836 did not authorize its admission as evidence of that fact, and that the notary did not state the places to which he sent the notices.

The following is the statement contained in the protest :

"*I then on the same day*" (the day of demand and refusal) "*deposited in the post office notices of non-payment for each of the indorsers, addressed to them at their respective places of abode.*"

The Court below overruled the objection, and received the protest as evidence of notice to the defendants, so far as the same was stated therein.

In the further progress of the cause, Clarke, the notary, was himself sworn as a witness on the part of the defendants, and after proving notice to the other defendants, testified that the notices to Walker and Rhodes were deposited by him in the post office at Augusta, not addressed to them at any post office, they being in the habit of receiving their letters and papers at the Augusta post office. It was further in proof by other witnesses, that Walker lived seven miles and a half from Augusta, and Rhodes twelve miles from Augusta, both in Richmond; that there was a post office at the Richmond Factory within two miles of one of them, and three miles of the other; that they each took a weekly paper published in Augusta, (which was deposited in the post office there,) and called at that office when they came to town, and sometimes sent there for their letters and papers, calling or sending at least once a week.

Upon this evidence, the defendants contended that the notice was insufficient to bind them. The Court below decided to the contrary, and so charged the jury, who rendered a verdict against them.

To which decisions and charge of the Court below, the defendants excepted, and assigned the same for error.

MILLER & CONE, for the plaintiffs in error.

GOULD & CUMMING, for the defendant.

Mr. MILLER, for the plaintiffs in error, made the following points:

1. The protest of the notary was no evidence of notice, the giving of notice not being an official act. *Hotchk.* 589; 2 *Johns. R.* 204; 2 *Hill N. Y. R.* 227.

2. The protest as evidence of notice is insufficient, inasmuch as it does not state the places to which the notices were addressed.

3. The notices to Walker and Rhodes deposited in the post office at Augusta, were insufficient to make them liable.

Mr. GOULD, for defendant in error.

I. It is conceded, that, at common law, the notary is *not bound* to give notice; and so far, the act is not official. *Morgan* vs. *Van Ingen*, 2 *Johns. R.* 204; 2 *Hill R.* 227. But,

1. Notice given by the notary binds the indorser because the notary is *authorized* to give it. *Bayley on B.* 164; 18 *Johns. R.* 230; 3 *Conn. R.* 489.

2. The Statute of Georgia gives full effect to the notice, and makes the protest evidence of it. See words of the act, *Hotchk.* 589, *sec.* 82.

As to the construction of this act:

*First.*—The *old law*—the *mischief*—and the *remedy.*

By the *old law*, such protests were not evidence at all on promissory notes.

The *mischief* was the inconvenience of requiring the notary's personal evidence in the first instance.

The only *remedy* was to dispense with such evidence. But if the notary must come in to prove notice, *cui bono* dispense with his evidence to prove *demand ?*

*Again*—the statute does not expressly make the protest evidence of *demand*, but only of *non-payment.* Would the legislature have passed the law for such a purpose ? If it would, it would legislate in vain, which is contrary to the first principles of construction.

*Again*—All legislation is in reference to the state of things then existing. The practice of notaries to state the fact of notice in their protests, was well known and uniform. The legislature, then, intended to provide for it.

*Again*—The act of 1822 made the first provision on this subject. The only doubt, under this law, arose on the words, " *where such certificates &c. are required by law.*" The act of 1836 merely omitted these words. *Daws.* 209, 210; *Hotchk.* 589, *sec.* 82.

Contemporaneous exposition, and uniform construction since, support this view; and a contrary decision would make the act of 1836 a dead letter.

All abuse is guarded against, by requiring the protest filed at the first term, and authorizing the examination of the notary.

*Second.*—A corresponding statute in South Carolina, makes the protest evidence of *notice*, but says nothing of *demand.* Holden, that it was good evidence of demand, under the statute. *Dobson* vs. *Laval*, 4 *McCord R.* 57.

II. If the protest be evidence of notice, the facts stated in this case are, *prima facie*, sufficient.

Notices are stated to have been mailed, directed to the parties *at their respective places of abode.*

Notices addressed to indorsers " at their respective residences,"

are conceded to be valid. The notary says they were so addressed. The residence of a party is a question of *fact*, not of *law*. *Prima facie*, this·protest must be taken as true. Suppose the notary, testifying in person, had used these very words only on the direct examination, need the plaintiffs have gone further? Cross examination would have shown to *what* places they were directed; and here, the defendant below had the privilege of further examination, and exercised it.

But, for the purposes of this argument, it is immaterial whether the statement in the protest was sufficient or not, or whether it was admissible at all, or not; for the admission of improper evidence is no ground for a new trial, where the same facts are proved by other testimony, and *a fortiori*, where they are ultimately not disputed. *Georgia Decisions*, II, 22, 121; 1 *Kelly R.* 580.

Here the notary was examined, proved the whole case, and stated *how* the notices were directed.

It is on his testimony that the facts appear on which the last ground of error is founded, viz., that

III. The notices to Walker and Rhodes were insufficient.

They were deposited in the post office in Augusta, directed to that office, where these parties usually received their letters and papers, calling or sending there once or twice a week, though another office (Richmond Factory) was several miles nearer to each of their dwellings, than that in Augusta.

Now, it is never necessary to show *actual notice* to an indorser, in order to charge him; for, though he is entitled to notice in order to protect himself, if *reasonable diligence* is used to give him notice, he is bound.

E. G. 1. Notice sent by mail is good, whether received or not.

2. If his residence could not be ascertained, after *reasonable inquiry*, notice is excused. *Chit. B.* 486; 12 *East*, 433.

3. Notice sent to the wrong place is good, if, on reasonable inquiry the holder was led to suppose the party lived there. *Chapman* vs. *Lipscombe*, 1 *Johns. R.* 294. *Reid* vs. *Paine*, 16 *id.* 218; *Bank of Utica* vs. *Davidson*, 5 *Wend. R.* 588; *Ransom* vs. *Mack*, 2 *Hill R.* 592.

*Again*—If no mail, notice may be sent by any ordinary conveyance, or by private hand.

The principle clearly is, that the holder is only required to place his notice in such a course of being forwarded, as is most likely to reach the indorser in the shortest and surest *reasonable* manner.

Why is notice by mail allowed at all? Because the indorser regularly calling for letters at his usual office, is likely to receive it soonest in that way.

The office to which the notice is directed, must be that at which the party *usually receives his letters.* Per *Spencer, C. J. Reid* vs. *Paine,* 16 *Johns. R.* 221; 4 *Wend. R.* 328; *Story sec.* 297; 3 *Kent* 107.

And this is the principle of *every decided case,* except those in which the indorser, living in the same place, was entitled to personal notice.

Now here, the parties could not claim personal notice. The very objection that another office was nearer to them, presupposes notice by mail to have been good; but, would notice sent to the Factory, have availed? There was no proof of their receiving letters there—and *de non apparentibus, &c.*—especially as the fact, if existing, could so easily have been proved. Notices sent to the Factory, could not, on any reasonable calculation, have reached either party as early, or as surely, as if directed to Augusta. Such notice, then, would have been held insufficient, on the ground that they did not *usually call* at that office for letters. The rule must work both ways.

Notice dropped in the office where the party lives, is good, *if there be a regular penny post.* 3 *Kent.* 107; not so where there is no penny post. Why? because reasonable diligence would give it to him in person, or leave it at his house, as the surest means of notice. It is not even pretended in this case, that the notary was bound to go or send *thirteen miles,* to give notice at the indorsers' dwellings. Such trouble never was required. See 1 *Peters,* 584, *( Thompson, J.)*

In *Ireland* vs. *Kip,* 10 *Johns. R.* 490, the indorser lived within the city limits.

In *Barber* vs. *Hall,* 1 *Mart. & Yerger R.* 183, the notice was left at an office which the indorser "*seldom visited.*" p. 186. (1827.)

This report cites a case from 3 *Littell,* 498, which we cannot refer to. For ought that appears, the indorser lived in the same town.

In *Clay* vs. *Oakley,* 3 *Louis. cond. R.* 480, we have an ingenious *lemma,* perfectly satisfactory to the court, which amounts simply to *petitio principii.* (1826.)

*McCrummen* vs. *McCrummen, ib.* 489, ruled by the same judge. (1826.)

*Laporte* vs. *Landry, ib.* 576. Same judge says, "the post office affords a safe means of conveyance, but not a place of deposit for letters." (1827.)

This is a mere play upon words.

*Louisiana Bank* vs. *Rowel,* 4 *id.* 37. Here, defendant lived only three miles from the office—as in *Ireland* vs. *Kip*—and the court was bound by its former decisions. (1828.)

*Ransom* vs. *Mack,* 2 *Hill R.* 587. (1842.) The court is governed by the above decisions, and *was bound* by *Ireland* vs. *Kip.* But the judge says, that the mail "arrangements" are more important than "corporate limits," in fixing the rules of notice. p. 591. Now, in our case, the "arrangement" was, that the parties called for their letters at Augusta.

*Finally*—We have cases in point.

*Bank of Columbia* vs. *Lawrence,* 1 *Peters R.* 578, (1828,) (subsequent to all those *contra,* except *Ransom* vs. *Mack.*)

*Jones* vs. *Lewis,* 8 *Watts & Serg. R.* 14. (1844.)

*Foster* vs. *Sineath* 2 *Rich. R.* 338, (1846,) and these two are the latest cases of all those cited.

Mr. Henry H. Cumming, in conclusion for the defendant in error, contended :

1. That the giving of notice of the non-payment of a promissory note, when done by a notary public, is an official act; and by the statutes of this State, his protest in relation thereto is made *prima facie* evidence of the facts therein stated. *Acts of Gen. Ass.* 1822, *pam. p.* 57 ; *ib.* 1836, *Hotchk.* 589; *Brook Sol. & Not. as referred to in Am. Jurist, vol.* 7, 347 ; *Bank of Utica* vs. *Smith,* 18 *Johns. R.* 230, 240 ; *Brown* vs. *The Philadelphia Bank,* 6 *Serg. & Rawle R.* 484, 487 ; *Stewart* vs. *Allison, ib.* 324 ; *Jenks* vs. *Doylestown Bank,* 4 *Watts & Sergt. R.* 505 ; *Dobson* vs. *Laval,* 4 *McCord R.* 57.

2. That to make a notarial protest stating the giving of notice, *prima facie* evidence that such notice was given, it is not necessary that the protest should state the name of the place to which the notice is sent. *Jenks* vs *Doylestown Bank, Watts & Sergt. R.* 507.

3. That even if protest was illegally admitted, the notary himself having been subsequently called and examined, and furnishing proof sufficient to justify the finding, this Court will not send the cause back for a rehearing. *McCleskey's adm'r.* vs. *Leadbetter,* 1 *Kelly R.* 551, 556 ; *Stephens et al.* vs. *Crawford, Gov., ib.* 574, 580.

4. (Covering 3d ground of plaintiffs in error.) That the deposit of the notices of non-payment for the indorsers Walker and Rhodes, in the post office at Augusta, to which they usually resorted, and were they received their papers and letters, was sufficient notice to fix their liability; and that the position assumed by the plaintiffs in error, that the post office, while it affords a safe means of conveyance, is not a legal place of deposit for notices of non-payment, is unsupported by argument or law. *Bank of Columbia* vs. *Lawrence*, (1828) 1 *Peters R.* 578; *Jones* vs. *Lewis*, (1844) 8 *Watts & Sergt. R.* 14; *Foster* vs. *Sineath*, (1846) 2 *Rich. R.* 338.

Mr. Cone, in conclusion, for the plaintiffs in error, made the following points:

1. That by the English law, notice of the non-payment of a note could be given to an indorser, by leaving it at his dwelling, at his office or place of business, by transmission by mail, and by notifying him personally. If not done in one of these ways, it was not available to charge the indorser. 3 *Kent Com.* 107; 10 *Johns. R.* 490.

2. That in the present case the indorsers were not notified in either of the foregoing ways, and were therefore discharged.

3. That in those States where it has been decided that leaving a notice at the post office, *not to be transmitted by mail*, was sufficient, the courts did not pretend that they were ruling according to the English law, but were prescribing a new rule. 1 *Peters R.* 581; 2 *Rich. R.* 338; 8 *Watts & Sergt. R.* 14.

4. That the Court was bound to decide according to the English law, and not to follow or adopt a new rule not sanctioned by that law, but unknown to it.

*By the Court.*—Warner, J., delivering the opinion.

The plaintiffs in error have filed upon the record in this case, three assignments of error to the decision of the Court below.

First, that the protest of the notary was improperly admitted as evidence of notice, the giving of notice not being an official act.
[1.] The Act of 26th December, 1836, amendatory of the Act of 1820, declares, "From and after the passage of this act, the certificates, protests, and other acts of notaries public, under the hand

and seal of such notary, in relation to the non-acceptance of any bill of exchange, draft, or other order, made for the payment of money or other thing, and also in relation to the non-payment of any bill of exchange, draft, order, bond, or note, for the payment of money or other thing, shall be deemed and received by the several courts of law and equity in this State, as sufficient *prima facie* or presumptive evidence of the facts therein stated, without any other or further proof: Provided always, that nothing in this act shall prevent either party, plaintiff or defendant, from having the benefit of the testimony of such notary, should they deem it necessary; and provided also, that the party relying on such notarial act, shall at the first term file in the court either a copy or the original of such protest or other acts." *Prince* 215.

It is objected, that the statute does not make the certificate of the notary *evidence of notice*, although it is made evidence of non-payment; and it is insisted that the giving of notice is not an official act. It is true the act does not in express terms declare that the certificate of the notary shall be evidence of *notice;* but the statute does declare, that the certificate of the notary shall be *presumptive evidence of the facts* stated therein, in *relation* to the non-acceptance of any bill of exchange, and also in *relation* to the non-payment of any bill of exchange, draft, order, bond, or note, for the payment of money or other thing. The legislature must be presumed to have known the law *relating* to the non-payment of promissory notes, and the steps necessary to be taken to fix the liability of the indorser, for they were legislating upon that very subject matter.

The giving of notice to the indorser has a very *intimate relation* in the eye of the law, to the non-payment of the note by the maker, in order to hold the indorser liable for its payment; and the act declares that the certificate of the notary shall be presumptive evidence of the facts stated therein, *in relation* to the non-payment of the note. To hold the indorser liable in law for the payment of the note on the non-payment thereof by the maker, the giving of notice is a *relative* part of the duty of the holder, which necessarily follows from a demand and refusal.

The giving of notice, then, may be considered as coming within the intention of the legislature, when it has declared that the certificate of the notary shall be presumptive evidence of the facts stated therein, *in relation* to the non-payment of a promissory note. But independently of this view of the question, when we take into

consideration the old law, the mischief which the legislature intended to remedy by dispensing with the testimony of the notary, added to the fact of the contemporaneous construction which has been given to this statute by our courts, we have ·no hesitation in declaring, as our judgment, that upon a fair construction of the statute, it was the intention of the legislature that the certificate of the notary should not only be *presumptive* evidence of the non-payment of the note, but also presumptive evidence of notice to the indorser. The legislature intended to make the acts of the notary, so far as relates to the non-payment of promissory notes, including the notice thereof to the indorser, *official*, when certified under his hand and seal, in the manner prescribed by the act.

[2.] The second ground of error assigned is, that " the protest of the notary was improperly admitted as evidence of notice, inasmuch as it did not state the places to which the notices were addressed."

The notary states in his certificate, made a part of the record, that on the same day of the demand and refusal of payment by the maker, " he deposited in the post office notices of non-payment for each of the indorsers, addressed to them at their respective places of abode."

The Act of 1836, as we have already seen, makes the certificates, protests, and other acts of notaries public under their hand and seal, *prima facie* or presumptive evidence of the *facts* therein stated, in relation to the non-payment of a promissory note. The notary states that notice of non-payment was deposited in the post office, addressed to the indorsers *at their respective places of abode.*

This statement of the notary must be taken as *prima facie* true, and the notices directed where the law requires them to have been directed. The law required the notices to be directed to the indorsers, at their respective places of abode, if known, or to such places as they would be most likely to receive them, in the shortest and most practicable manner. The argument is, that the notary should have stated the *particular place* to which he addressed the notices.

The Court must look at the *facts* stated by the notary in his certificate, and pronounce the law arising thereon. The facts are, that the notices were addressed to the indorsers at their respective places of abode. This address, in our judgment, was a compliance with the law, and made out a *prima facie* case for the plaintiff under the statute; the defendants having the right to controvert

the facts if they thought proper to do so, by examining the notary as a witness; and for this purpose the act requires the certificate of the notary to be filed at the first term of the court. The notary has, in our judgment, stated the place to which the notices were addressed, and that place is, the *abode* of the indorsers. We are to understand that the notary did his duty, that he knew the residence ,or abiding place of the indorsers, to which he states the notices were addressed.

Would the evidence have been any more satisfactory if the notary had stated that he had addressed the notices to a *particular place*, without stating that that particular place *was the abode* of the defendants ? On having stated the particular place to which the notices were addressed, had he also added that such particular place was the abode of the defendants, which part of the statement would have made the notice available in law ? the statement of the *particular place*, or the statement of the notary that the particular place *was the abode of the defendants?* We are bound to take the statement of the notary as *prima facie* true, that the notice was properly directed to the indorsers, at their respective places of abode—*that fact* being stated in the certificate of the notary.

The third ground of error assigned is, that " the notices to [3.] Walker and Rhodes, deposited in the post office at Augusta, were insufficient to make them liable."

It appears from the evidence of the notary, who was examined by the defendants in the Court below, that the notices to them were deposited by him in the post office at Augusta, not addressed to them at any post office, they being in the habit of receiving their letters and papers at Augusta. It was also proved, that Walker lived seven and a half miles from Augusta, and Rhodes twelve miles from Augusta, both in Richmond county; that there was a post office at the Richmond Factory, within two miles of one of them and three miles of the other; that they each took a weekly paper published in Augusta, which was deposited in the post office there; that they called at the post office in Augusta when they came to town, and sometimes sent there for their letters and papers, calling or sending at least once a week.

The decisions of the courts in the several States are in conflict, as it regards depositing the notice in the post office, addressed to the party at the place of deposit; and we must be governed by those which, in our judgment, are best sustained by the principles of the commercial law applicable to this class of cases. The law

does not require the utmost possible diligence in giving notice of the dishonour of a note ; all that is required is ordinary *reasonable* diligence. The holder must give notice in such manner as is *reasonably* calculated to bring it to the knowledge of the indorser, without *unreasonable* delay. The defendants resided in the country, and there was a post office nearer to each of them than the Augusta post office ; but we think the evidence contained in the record clearly establishes the fact, that they were in the habit of receiving their letters and papers through the Augusta post office. With a knowledge of this fact, had the holder transmitted the notice to the indorsers at the Richmond Factory, the nearest post office, but not the one through which they were in the habit of receiving their communications, and perhaps an office which they seldom visited, could it be said that the holder had used such diligence as was *reasonably* calculated to bring notice to the knowledge of the indorsers of the dishonour of the note, without unreasonable delay ? Was not the notice placed where, according to the evidence, the defendants would be *most likely* to receive it in the most expeditious and practicable manner through the agency of the post office ? They received their weekly papers at the Augusta office, called there for their letters and papers when they visited the city, and either called or sent there for them at least once a week. Suppose the holder of the note had resided in the city of Charleston at the time of its maturity, and knew that the defendants were in the habit of receiving their letters and papers through the post office at Augusta, or could have ascertained that fact on reasonable inquiry, to which office ought the holder to have transmitted the notice ? to the office at the Richmond Factory, or the Augusta office ? Most certainly to the Augusta office ; and for what reason ? because they would be most likely to receive the notice in the shortest practicable manner, and without unreasonable delay. The holder would have exercised due diligence in sending it there.

It is not indispensable that the notice to the indorser should be sent to the post office *nearest* to his residence; it is *sufficient* if it be sent to the office to which he *usually resorts* for his letters. *Bank of Geneva* vs. *Howlett*, 4 *Wend. R.* 331; *Reid* vs. *Payne*, 16 *Johns. R.* 221.

On what principle is it, that the law allows the notice to be good when sent to the more remote post office from the residence of the indorser? Because the holder has used *reasonable diligence*

in ascertaining the place where the indorser *usually resorts for his letters and papers*, and has directed the notice to that place where it may be reasonably presumed he would receive it in the shortest period of time, and without any unreasonable delay.   Let us now apply this principle of commercial law to the case before us.   The defendants resided in the country, in the county of Richmond, and the Richmond Factory post office was nearest to them, but it does not appear from any evidence disclosed by the record, that either of them received their letters and papers from that office; but it does appear, that they were in the habit of receiving their letters and papers from the office at Augusta; that they usually resorted there for that purpose, or sent there at least once a week.   At which office may it reasonably be presumed they would receive the notice in the shortest period of time, and without any unreasonable delay? at the office where they were in the habit of calling or sending for their letters once a week, or at the office where it does not appear they ever resorted for that purpose?

Independently of decided cases, we think the general principles of commercial law applicable to this class of cases would constitute it a good notice and sufficient to bind the indorsers for the payment of the note.   The notices were placed in the post office at Augusta, addressed to them there, at which place they were in the habit of receiving their letters and papers.

The argument for the defendants however is, that inasmuch as the notices were not to be transmitted by the mail, that the post office was not a proper place to deposit the notices, that the post office could only be employed as the agent for that purpose when the notices were to be forwarded to some other office than the one at which they were deposited.   Upon this point the authorities, as we have before stated, are in conflict.

The general rule with regard to giving notice of the dishonour of bills and notes, is, that where the parties reside in the same city or town, the notice must be personal, or by leaving it at the dwelling house or place of business of the party, if absent; but if the indorser reside at a different place, then notice may be sent through the post office to the post office nearest to him, or to the one to which he *usually resorts* for his letters and papers.   Story, in his commentaries on the law of promissory notes, states the rule to be, that " If he (the indorser) resides in the country, on a plantation, in a county where there is no town, or where there are several county post offices, notice sent to the post office where he

is accustomed to receive his letters, if known, will be proper." *Story on Promissory Notes*, 414, *sec.* 343. Where the parties live in the same town or city, the notice is good, if left at the dwelling house of the party in a way *reasonably calculated* to bring the knowledge of it home to him. 3 *Kent Com.* 107.

Why is the notice good when left at the dwelling house or place of business of the indorser? Because it is left at a place where he usually resorts, and at a place *reasonably calculated* to bring the knowledge of it home to him. Why is the notice to the present defendants, who reside in the country, but who are in the habit of receiving their communications through the Augusta post office, good? Because they are in the habit of resorting to that office, or sending there once a week for their letters and papers, and a notice deposited there directed to them, is *reasonably calculated* to bring the knowledge of such notice home to them in the shortest period of time, and without any unreasonable delay. The post master at Augusta had the legal and proper custody of the notices when deposited in his office, and was legally bound to deliver them to the persons to whom the same were addressed, and to charge the legal rate of postage thereon. The 36th section of the act of congress, 1825, declares, "For every letter lodged at any post office not to be carried by post, but to be delivered at the place where it is so lodged, the post master shall receive one cent of the person to whom it shall be delivered." *Gordon's Dig. Laws U. S.* 98. The post office at Augusta was a place where letters might have been deposited for delivery to the persons to whom the same were addressed, as well as those received by the due course of the mail. The defendants resided in the country, one, seven and a half miles, and the other, twelve miles from the city, and were in the habit of resorting or sending to the post office at Augusta, at least once a week, for their letters and papers. This fact of itself negatives the idea, in the absence of any affirmative testimony, that the defendants received their letters and papers from the Richmond Factory post office.

The defendants did not reside in the city, nor did they have any place of business there. Was the holder bound to employ a special messenger for the purpose of giving them notice, when they were in the habit of resorting or sending to the city post office once a week for their letters and papers? We do not think the law imposed such a duty upon the holder of the paper. In the case of the *Bank of Columbia* vs. *Lawrence*, 1 *Peters R.* 584,

the court say: "The holder *may* employ a special messenger if he pleases, but no case has been found, where the English courts have directly decided that he *must*. To compel the holder to incur such expense would be unreasonable, and the policy of adopting a rule that will throw such an increased charge upon commercial paper, on the party bound to pay, is at at best very questionable." In view of the facts of this case, as disclosed by the record, we are of the opinion that the holder of the paper exercised due and reasonable diligence in depositing the notice in the post office, in the city of Augusta, addressed to the defendants there, that being the post office at which they were in the habit of receiving their letters and papers, and the place which was *reasonably calculated* to bring home to them the knowledge of the dishonour of the note, in the shortest practicable manner, and without any unreasonable delay.

The following cases are cited as authority for depositing the notices in the post office at Augusta, addressed to the defendants at that place. *Foster* vs. *Sineath*, 2 *Rich. R.* 338; *Bank of Columbia* vs. *Lawrence*, 1 *Peters R.* 578; *Jones* vs. *Lewis*, 8 *Watts & Sergt. R.* 14. These cases, we think, are based on the principles of commercial law, and best adapted in our judgment, to give a practical effect to those principles when applied to the various commercial transactions of our people, residing as they frequently do at a distance from any town or city, and receiving their communications through the post office of such town or city.

Let the judgment of the Court below be affirmed.